UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CORINNE RIGDON,<br>    Plaintiff,<br><br>v.<br><br>AUTOMATED WASTE DISPOSAL INC. and<br>PAUL DINARDO<br>    Defendants. | :<br>:<br>:<br>:<br>:   3:07-cv-1897 (WWE)<br>:<br>:<br>:<br>: |

**MEMORANDUM OF DECISION ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This action arises from the alleged demotion of plaintiff Corinne Rigdon from her position by defendants Automated Waste Disposal Inc. and Paul DiNardo. Plaintiff alleges that her demotion violated Title VII of the Civil Rights Act of 1964 ("Title VII") and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60(a). Plaintiff also asserts claims of negligent infliction of emotional distress and intentional infliction of emotional distress. Now pending before the Court is defendants' Motion for Summary Judgment (Doc. #24). For the following reasons, the motion for summary judgment will be granted.

The Court has jurisdiction over plaintiff's claims pursuant to 28 U.S.C. § 1331 as to plaintiff's federal law claims and pursuant to 28 U.S.C. § 1367 as to plaintiff's state law claims.

**BACKGROUND**

The parties have submitted briefs, a stipulation of facts and supporting exhibits,

1

which reflect the following factual background.[1]

Defendant Automated Waste Disposal, Inc. ("AWD") is a private waste disposal company servicing residential and commercial customers. Defendant Paul DiNardo is AWD's Interim Chief Executive Officer.

On July 24, 2003, AWD hired plaintiff Corinne Rigdon as a Residential Customer Services Representative, a clerical position in which plaintiff would, among other tasks, answer phones and file paperwork relating to residential customer issues and truck drivers on residential routes. On June 13, 2004, plaintiff was promoted to dispatcher in AWD's Roll Off Department. She was one of three dispatchers employed by AWD. As a dispatcher, plaintiff's responsibilities included interacting with commercial customers, truck drivers and office personnel relating to the pick-up and disposal of waste businesses and other non-residential customers.

As a dispatcher, plaintiff worked from 7:00 a.m. to 5:00 p.m. Monday through Friday. She worked regular overtime three or four weekdays per week for about an hour per day and on alternating Saturdays.

On February 3, 2005, plaintiff resigned from AWD, in what she refers to as a leave of absence. Prior to her resignation, plaintiff had no complaints about her treatment at AWD. Plaintiff returned to work for AWD as a dispatcher on June 13, 2005 because AWD had been "very good to [her] over the years...."

Within a few months of plaintiff's return to AWD, AWD decided to streamline the

---

[1] To several of defendant's assertions of fact, plaintiff responded that she lacks sufficient knowledge to agree or disagree. Such assertions will be accepted as true pursuant to Local Rule 56(a).

dispatch process by designating one dispatcher to determine which truck drivers should cover which routes when a driver was absent.  This person was designated the lead dispatcher.  The designation was neither a formal title nor a supervisory role and did not come with the authority to hire, fire, discipline or confer benefits upon employees.  Defendants claim that it was not a promotion and did not come with any additional pay or benefits.  Because of this, AWD did not update or alter its records, including the organizational chart, to reflect this designation.  According to defendants, the duties of the lead dispatcher were "the same as a dispatcher except you ha[d] to keep a more close eye on the drivers...."

     Plaintiff was the highest paid of the three dispatchers.  Given her relative seniority and general knowledge as dispatcher, she was designated lead dispatcher – the first employee to be so designated.  Plaintiff testified that she received a pay increase at this time of one dollar, presumably per hour.  Plaintiff also testified that her work location changed and that she was considered the liaison between upper management and the drivers.  Her schedule did not materially change, though plaintiff testified that the number of overtime hours she worked was slightly reduced.  Despite having designated plaintiff as lead dispatcher, plaintiff's direct supervisor, Rick Caccavale, the Roll Off Manager, continued to receive many of the calls regarding driver absences.

     Although plaintiff's performance was generally satisfactory, Caccavale and Denise Raiford, AWD's Office Manager, received numerous complaints about plaintiff's attitude and temper and the manner in which she addressed her colleagues.  These included complaints from drivers about plaintiff's condescending and confrontational

manner in communicating with the drivers and other employees and complaints about her excessive use of profanities and about her arguing with her boyfriend on the phone loudly during work hours.  Plaintiff was not informed of these complaints.  Defendants claim that Caccavale warned plaintiff numerous times about her behavior; plaintiff denies this.  Raiford also received comments from the Customer Service Representatives she supervised regarding the inappropriate manner in which plaintiff addressed drivers and the Customer Service Representatives.  Raiford claims and plaintiff denies that Raiford spoke to plaintiff about this.

Beginning in September 2006, Raiford began to relay complaints about plaintiff to Caccavale on a monthly basis in the hopes that the problems could be remedied.  During the first quarter of 2007, defendants assert that plaintiff's attitude toward her colleagues and the frequency of her outbursts seemed to be increasing.

In April, it was decided that plaintiff would not hold the designation of lead dispatcher.  She was informed of this on April 6.  Instead, Neal Delaporta, another dispatcher, would hold the designation.  Defendant DiNardo, as AWD's Interim Chief Executive Officer, in informing plaintiff of her reassignment, told plaintiff that she was "too emotional" in her dealings with colleagues and that defendants believed that Delaporta was more even-tempered.  Plaintiff did not know what DiNardo meant by "too emotional."  DiNardo claims that his decision was based on the complaints about plaintiff's interactions with drivers and other employees.  Defendants assert that plaintiff did not experience any change in her pay, benefits or any other term or condition of her employment.  Plaintiff contends that she experienced a "significant" change in the terms of her employment because, although her "hours didn't decrease drastically," she "didn't

have as much [overtime]" as she did when she was lead dispatcher.  Plaintiff remained the highest paid dispatcher.

On April 9, plaintiff approached AWD's General Manager, David Dunleavy, regarding her displeasure with no longer being designated lead dispatcher and claimed that such change of position was due to her gender.  Dunleavy investigated her formal complaint and conducted witness interviews.  The sole basis for plaintiff's complaint was that she believed that she was "unfairly demoted from [her] position for no reason" because DiNardo had told her that she was "too emotional."  Dunleavy interviewed plaintiff, DiNardo, Raiford and Caccavale.  Based upon his investigation, Dunleavy concluded that there was no basis to conclude that plaintiff was discriminated against because of her gender.

At this same time, in April 2007, DiNardo conducted a review of the position of lead dispatcher to determine if it was resulting in the goals for which it was intended.  Finding that the designation did little to streamline operations and that the lead dispatcher designation was a "distinction without a difference" compared to the dispatcher designation, the lead dispatcher designation was eliminated effective June 1, 2007, less than two months after plaintiff had been removed from that position.

Plaintiff continued to receive regular pay increases.  By September 17, 2007, the other two dispatchers had resigned, and plaintiff was left as the sole dispatcher.  She was, therefore, responsible for all dispatcher functions, including communications with drivers.  On November 11, 2008, she resigned from her position with AWD.

Plaintiff has exhausted all administrative remedies prior to commencing this action.

**DISCUSSION**

A motion for summary judgment must be granted if the pleadings, discovery materials before the court and any affidavits show that there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A dispute regarding a material fact is genuine if there is sufficient evidence that a reasonable jury could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  Am. Int'l Group, Inc. v. London Am. Int'l Corp., 664 F. 2d 348, 351 (2d Cir. 1981).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate.  Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  Liberty Lobby, 477 U.S. at 24.  The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient; there must be evidence on which the jury could reasonably find for him.  See Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the court resolves all ambiguities and draws all permissible factual inferences in favor of the nonmoving party.  See Patterson v. County of Oneida, 375 F.3d 206, 218 (2d Cir. 2004).  If there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper.

See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

Defendants move for summary judgment on all of plaintiff's claims.

**I.      Title VII Claim**

Plaintiff alleges that she was discriminated against because of her gender in violation of Title VII and the CFEPA.  Because Connecticut law follows Title VII in all parts relevant to the instant matter, no distinction will be made in considering plaintiff's federal and state claims.  Burbank v. Blumenthal, 75 Fed. Appx. 857, 858 (2d Cir. 2003).  Title VII prohibits an employer treating an individual less favorably on account of her gender.  42 U.S.C. § 2000e-2; Feingold v. New York, 366 F.3d 138, 150 (2d Cir. 2004).

Where there is no direct evidence of discrimination, a Title VII claim is analyzed under the shifting burdens described in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-804 (1973).  Under this rubric, plaintiff must first establish a prima facie case of discrimination.  Getschmann v. James River Paper Co., Inc., 822 F.Supp. 75, 77 (D. Conn. 1993).  Defendants must then articulate a legitimate, non-discriminatory reason for taking the actions that establish the prima facie case.  The reason provided must be both "clear and specific."  Meiri v. Dacon, 759 F.2d 989, 997 (2d Cir. 1985).  If defendants satisfy this requirement, plaintiff must show that defendants' proffered reason is a pretext for discrimination.  Plaintiff is not required to prove that the prohibited motivation was the sole or even the principal factor in the decision, or that the employer's proffered reasons played no role in the employment decision, but only that those were not the only reasons and that plaintiff's protected status contributed to

7

the employer's decision.  Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 78 (2d Cir. 2001).  At all times, plaintiff bears the burden of persuading the trier of fact that defendants intentionally discriminated against her.  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993).

A prima facie case under Title VII requires that plaintiff show that (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination.  Petrosino v. Bell Atl., 385 F.3d 210, 226 (2d Cir. 2004).  At this stage, plaintiff's burden is minimal.  Fisher v. Vassar College, 114 F.3d 1332, 1335 (2d Cir. 1997).

In opposition to summary judgment, plaintiff's substantive argument is limited to, in its entirety:

> In this case, there is no question that Plaintiff is a member of a protected class. Additionally, for purposes of Plaintiff's meeting her prima facie burden, the court should assume that her performance was satisfactory. Plaintiff testified at her deposition, that (1) her personnel file, prior to her demotion, reveal[ed] no indication of poor job performance or discipline, (2) her job duties and responsibilities diminished following her demotion.

Even if the Court were to accept these statements as true, plaintiff's opposition does not address the inference of discrimination necessary to maintain a case under Title VII.  Presumably, her claim is based on the argument that the statement that she was "too emotional" was a reference to her gender.  There are several reasons why this argument will not defeat summary judgment.  First, plaintiff does not make it.  Second, there is no evidence that the statement that plaintiff was "too emotional" was an explicit

8

or implicit reference to her gender.  See Weinstock v. Columbia Univ., 224 F.3d 33, 43 (2d Cir. 2000) (finding that references to plaintiff as "nice" or "nurturing," if made, were not directed to her gender).  Third, there are legitimate, non-discriminatory reasons for defendants' action.  Namely, the undisputed evidence shows that the drivers and plaintiff's coworkers found plaintiff to be a difficult coworker.  Such evidence provides a legitimate, non-discriminatory basis for defendants' action, a basis that plaintiff does not refute.  Without evidence to support an inference of discrimination, and, therefore, to establish a prima facie case of discrimination under Title VII, summary judgment is appropriate on plaintiff's Title VII and CFEPA claims.

## II.     Emotional Distress Claims

Defendants moved for summary judgment on plaintiff's claims of intentional infliction of emotional distress and negligent infliction of emotional distress.  Plaintiff did not respond to these arguments.  Therefore, the Court will grant summary judgment on them, finding them abandoned.  See Taylor v. City of New York, 269 F.Supp.2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.").

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motion for summary judgment (Doc. #24). The Clerk is instructed to close this case.

Dated at Bridgeport, Connecticut, this 22d day of June, 2009.

                                        /s/
                                Warren W. Eginton
                                Senior United States District Judge